In the Matter of PINELLAS–PASCO WHOLESALE TIRE CO., INC., Debtor.

PINELLAS–PASCO WHOLESALE TIRE CO., INC., Plaintiff,

v.

NORTHEAST BANK OF CLEARWATER, Defendant.

BRIDGESTONE TIRE COMPANY OF AMERICA, Plaintiff,

v.

AMERICAN TRANSPORTATION PRODUCTS, INC.; Pinellas-Pasco Wholesale Tire Co., Inc.; Bayonet Point Service Center, Inc.; Countryside Service Center, Inc.; and Northeast Bank of Clearwater, Defendants.

In re AMERICAN TRANSPORTATION PRODUCTS, INC., Debtor.

AMERICAN TRANSPORTATION PRODUCTS, INC., Plaintiff,

v.

NORTHEAST BANK OF CLEARWATER and Yokohama Tire Corp., Defendants.

YOKOHAMA TIRE CORP., Crossclaimant,

v.

NORTHEAST BANK OF CLEARWATER, Crossdefendant.

NORTHEAST BANK OF CLEARWATER, Counter-crossclaimant,

v.

YOKOHAMA TIRE CORP., Counter-crossdefendant.

NORTHEAST BANK OF CLEARWATER, Third-party Plaintiff,

v.

COLLATERAL CONTROL CORPORATION, Third-party Defendant.

YOKOHAMA TIRE CORPORATION, Claimant,

v.

AMERICAN TRANSPORTATION PRODUCTS, INC.; Pinellas-Pasco Wholesale

**560**

Tire Co., Inc.; Bayonet Point Service Center, Inc.; Countryside Service Center, Inc.; and Northeast Bank of Clearwater, Defendants.

Bankruptcy Nos. 81-1433, 81-1432.
Adv. Nos. 81-378, 81-354.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Nov. 23, 1983.

Harley E. Riedel, Tampa, Fla., for Pinellas-Pasco Wholesale Tire Co., Inc. and American Transp. Products, Inc.

Thomas Mimms, Jr., Tampa, Fla., for Northeast Bank of Clearwater.

William K. Zewadski, Tampa, Fla., for Yokohama Tire Corp.

Robert B. Glenn, Jr., Tampa, Fla., for Collateral Control Corp.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THE MATTER under consideration arose originally in connection with four interrelated Chapter 11 cases commenced by voluntary petitions for relief filed by Pinellas-Pasco Wholesale Tire Co., Inc. (Pinellas-Pasco); Countryside Service Center, Inc. (Countryside); American Transportation Products, Inc. (American Transportation); and Bayonet Point Service Center, Inc. (Bayonet). The several adversary proceedings filed in each of these cases related to the validity and extent of various security interests in the inventory of the several debtors. The cases have all been converted to Chapter 7 liquidation cases pursuant to § 1112(b) of the Bankruptcy Code and, thus, these Debtors no longer have any interest in the ultimate resolution of this controversy. The remaining issues are between Northeast Bank of Clearwater (Bank) and Yokohama Tire Corporation (Yokohama), two non-debtors who claim a valid security interest in the same collateral.

The procedural aspects of this adversary proceeding are exceedingly complex. However, it is unnecessary to trace the procedural history in order to understand the narrow issues now before the Court. It is sufficient to describe the parties and to set forth the facts which gave rise to and are germane to the resolution of this controversy.

American Transportation, Pinellas-Pasco, Bayonet and Countryside are four affiliated corporations controlled by the same principals who owned and operated retail tire outlets located in Pinellas County, Florida. The Debtors were engaged in the retail and some wholesale distribution of tires and allied products. The Northeast Bank of Clearwater is a national bank located in Pinellas County, Florida and Yokohama Tire Corporation is a California corporation

engaged in the sale and distribution of automobile tires and allied products.

On July 9, 1980, Pinellas-Pasco obtained a loan in the amount of $150,000 from the Bank (Bank's Exh. # 1). As security for the loan, Pinellas-Pasco executed a security agreement in which Pinellas-Pasco granted to the Bank "a continuing security interest in all collateral, as herein defined, of which Borrower has a property interest whether now or hereafter existing or acquired." (Bank's Exh. # 2). "Collateral" is defined as ... "Goods, Inventory, Proceeds, Instruments, Accounts, Contract Rights, Chattel Paper, General Intangibles and Equipment." The Bank perfected its security interest by filing a UCC-1 with the Secretary of State on July 9, 1980. (Bank's Exh. # 3).

In addition, Pinellas-Pasco, the Bank, and Collateral Control Corporation entered into a collateral control agreement (Bank's Exh. # 3) whereby Pinellas-Pasco agreed to lease warehouse space to Collateral Control and to keep at least $214,500 worth of tires warehoused at all times, to stand as security for the Bank loan. At the time of the transaction between the Bank and Pinellas-Pasco, American Transportation was not yet in existence.

In October, 1980, Richard Schwartzman formed American Transportation with the intention that the new corporation would provide certain centralized services for the other three existing corporations.

In May, 1981, Rick Jones, an employee of Pinellas-Pasco contacted Yokohama for the purpose of purchasing tires on behalf of American Transportation. In due course, Jones, Schwartzman and Gary Waters, a district manager of Yokohama, met to discuss the tire purchase. Jones explained to Waters, the operations of the four interrelated companies, submitted an entire financial package which included a consolidated financial statement and an organizational scheme of the four related companies. The entire package was presented under the Pinellas-Pasco letterhead (Bank's Exh. # 13) and signed by R.E. Schwartzman, a principal in all four companies. The income and cash flow projections clearly reveal the interrelationship of the four companies with American Transportation shown as performing management and administrative functions for the other three "outlets."

American Transportation submitted a credit application to Yokohama and on May 19, 1981, executed a "Dealer Security Agreement" (Bank's Exh. # 22) and an "Authorized Dealer Agreement." (Yokohama's Exh. # 1). It appears that the original Security Agreement was deemed unacceptable by Yokohama, was never executed by Yokohama and was subsequently replaced by the later agreement of June 1, 1981 (Bank's Exh. # 14). The revised Security Agreement names all four companies as "Dealer" and declares all four to be jointly and severally liable for payment of the soon to be acquired Yokohama Tires (Bank's Exh. # 14).

The June 1 Security Agreement provides in pertinent part:

This Security Agreement made this 1st day of June, 1981, by and between YOKOHAMA TIRE CORPORATION, a California Corporation (hereinafter Yokohama) and the following entities, referred to collectively as "Dealer" and individually as stated:

"AMERICAN TRANSPORTATION PRODUCTS, INCORPORATED (American), BAYONET POINT SERVICE CENTER, INCORPORATED (Bayonet Point), COUNTRYSIDE SERVICE CENTER, INCORPORATED (Countryside) AND PINELLAS–PASCO WHOLESALE TIRE COMPANY (Pinellas)."

Further, Paragraph 1(b) states:

(b) American is the parent of each other corporation, and will be billed for all sales to Dealer by Yokohama, but American, Bayonet Point, Countryside, and Pinellas-Pasco each agrees that all of its collateral described below shall secure the payment of all of American's obligations to Yokohama, that they shall have joint and several liability for all of such obligations, however incurred and that each has full power and authority to enter into this agreement and be bound thereby.

Other significant sections of this security agreement imposes upon each corporate en-

tity, as dealer, a duty to maintain the collateral, pay taxes, allow Yokohama access to the collateral and insure the collateral. It is absolutely clear that the Security Agreement executed by Yokohama was intended and did, in fact, run to all four of the separate, but related corporate entities, including Pinellas-Pasco.

Yokohama delivered its tires to the "Dealer" at the parking lot shared by Pinellas-Pasco and American Transportation on June 9, 1981 and June 15, 1981 and it appears that more than one half of the tires were placed in the Pinellas-Pasco warehouse. It further appears that the remaining tires were at some time allocated to Bayonet and Countryside. Yokohama obtained UCC–1's from each of the four companies. They were filed with the Secretary of State on July 7, 1981 (Bank's Exh. # 15). Yokohama did not notify the Bank of its purchase money security interest in the Yokohama tires.

In early July, 1981, Pinellas-Pasco was declared in default by the Bank, Collateral Control ceased its warehousing operation and on or about July 15, 1981, the Bank began to repossess the tire inventory including Yokohama tires.

At the commencement of the trial, it was stipulated that the Bank held $9,069.22 from the sale of Yokohama tires, in a separate account. The parties also stipulated that the Yokohama tires retrieved by Yokohama on February 11, 1982 had a value of $48,999.58; that Yokohama would be reimbursed for its out-of-pocket expenses not to exceed $2,450, leaving a net value of $46,549.58.

The sole issue before this Court is whether Pinellas-Pasco acquired sufficient rights in the Yokohama tires as contemplated by § 679.203(1)(c) Fla.Stat. (1979) to allow the Bank's security interest in after acquired collateral to attach to the Yokohama tires and to give the Bank a perfected security interest with priority over Yokohama's purchase money security interest.

§ 679.203 provides in pertinent part:

(1) ... a security interest is not enforceable against the Debtor or third parties with respect to the collateral and does not attach unless

(a) the collateral is in the possession of the secured party pursuant to an agreement, or the debtor has signed a security agreement which contains a description of the collateral ...

(b) value has been given; and

(c) the debtor has rights in the collateral. It is clear that the first two requirements of § 679.203 were complied with on July 9, 1980 when Pinellas-Pasco and the Bank executed a security agreement whereby Pinellas-Pasco granted a continuing security interest in all collateral including after acquired property (Bank's Exh. # 2) and the Bank loaned $150,000 to Pinellas-Pasco. However, unless Pinellas-Pasco acquired "rights" in the Yokohama tires prior to July 7, 1981 (when Yokohama filed the UCC financing statements with the Secretary of State) the Bank's security interest failed to attach and Yokohama must prevail.

It is the opinion of this Court that on the narrow facts of this case, Pinellas-Pasco acquired rights in the collateral upon delivery of the tires by Yokohama; that the security interest of the Bank in after-acquired property automatically attached and perfected pursuant to § 679.303 Fla.Stat. no later than June 15, 1981 and the Bank's security interest takes priority over Yokohama's purchase money security interest as a direct result of Yokohama's failure to comply with the provisions of § 679.312 Fla. Stat. (1979).

Section 679.312 provides in pertinent part: (3) A perfected purchase money security interest in inventory has priority over a conflicting security interest in the same inventory and also has priority in identifiable cash proceeds received on or before the delivery of the inventory to a buyer if:

(a) the *purchase money security interest is perfected at the time the debtor receives possession of the inventory;* and

(b) the *purchase money secured party gives notification in writing to the holder of the conflicting security interest if the holder had filed a financing statement covering the same types of inventory:*

1. Before the date of the filing made by the purchase money secured party; (c) the holder of the conflicting security interest receives the notification within 5 years before the Debtor receives possession of the inventory; and

(d) the notification states that the person giving the notice has or expects to acquire a purchase money security interest in inventory of the Debtor, describing such inventory by item or type.

If any of the foregoing requirements are not met, the priority of the purchase money security interest shall be determined under subsection (5).

§ 679.312 Fla.Stat. (supp. 1983).

It is clear that in the case at bar, Yokohama failed to perfect its security interest in the inventory and proceeds prior to the time when the Debtor received possession of the inventory. Further, Yokohama did not notify the Bank of its security interest as required by § 679.312(3)(b) Fla.Stat. Thus, pursuant to § 679.312(5)(a), the Bank, whose perfected security interest in inventory and proceeds was prior in time, prevails over the security interest of Yokohama Tire Corporation.

A separate final judgment shall be entered in accordance with the foregoing.